# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| JOHN P. ZUMWALT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:10CV561RWS |
| | ) | |
| CITY OF WENTZVILLE, et al, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff John P. Zumwalt was a Patrol Officer with the Police Department of the City of Wentzville, Missouri until August 2009. Zumwalt alleges that Defendants City of Wentzville, Dianne Wright, individually and in her capacity as City Administrator for the City of Wentzville, and Robert Noonan, individually and in his capacity as Chief of the Police Department of the City of Wentzville, wrongfully terminated him based on his union activities, speech, and without due process of law. Defendants have moved to dismiss Zumwalt's complaint in its entirety. For the reasons stated below, I will grant Defendants' motion in part and deny it in part.

## Background

In his First Amended Complaint,[1] Zumwalt alleges the following facts:

Plaintiff John P. Zumwalt was employed by the Police Department of the City of Wentzville ("the Department") from February 1993 until August 2009. During that time, Zumwalt was a vocal advocate for the uniform administration of the Department's rules and regulations, and he objected to, and refused to participate in, cronyism and the selective enforcement of work rules. As a result of Zumwalt's refusal to participate in that activity, Zumwalt received various "corrective actions" and demotions in rank despite receiving job evaluations that ranked his job performance as satisfactory or exceeding expectations.

Zumwalt actively advocated for collective bargaining rights for the "rank and file" members of the Department. In February 2009, after a majority of the Department voted to establish the Laborer Police and Public Employee Local 1032 as their bargaining agent, the City recognized the Local 1032 as a bargaining unit representative. Immediately after the election, Zumwalt was elected "shop steward" and to the Local 1032 bargaining unit team.

---

[1] Zumwalt's pleading is titled "First Amended Petition for Review." The pleading was filed in state court and was removed to the Eastern District of Missouri on April 1, 2010. Consistent with the Federal Rules of Civil Procedure, I will refer to the amended state court pleading as Zumwalt's First Amended Complaint.

On July 6, 2009,[2] the bargaining team met in its initial bargaining session with the City and its agents, servants, and employees. On August 3, 2009, the bargaining team again met with the City to negotiate work rules and procedures under a collective bargaining agreement.

Zumwalt was notified in writing that an off-duty Foristell police officer filed a complaint against him regarding an incident that occurred on August 1, 2009. City personnel had actively procured or solicited the filing of the formal complaint. Zumwalt believes their decision to do so was based on his status as a "vocal advocate" for collective bargaining rights and his position as a member or Local 1032's bargaining team. On August 6, 2009, the City provided Zumwalt with written notice of the allegations and placed him on suspension. The City's Human Resources Specialist and members of the Department conducted an investigation into the incident based on "unknown investigative techniques" and "unknown evidentiary standards." Less than one week later, on August 12, 2009, Zumwalt was notified that, as a result of the investigation and the determination of the Chief of Police, Defendant Robert Noonan, the City was terminating

_____

[2] The First Amended Complaint says July 6, 2010, but it is clear from the context that Zumwalt meant to allege this session occurred on July 6, 2009.

Zumwalt's employment, with the approval of the City Administrator, Defendant Dianne Wright.[3]

Zumwalt sought an appeal under the procedures set forth in the City's ordinance adopting the "Uniform Personnel Policies and Procedures." Wright arranged a hearing before the Personnel Review Board and permitted Zumwalt to have a non-participating observer who was a full-time employee of the City. According to Wright's letter, the appeal was pursuant to "[t]he administrative grievance procedure . . . outlined in Article VI, Section 6.2 #4 of the City of Wentzville's policy manual," and a "formal hearing process" would be held concerning the disciplinary action. Before the hearing, Zumwalt provided the City with a list of witnesses, summarized their relevant testimony, and alleged various pretextual and retaliatory reasons for his termination. Zumwalt alleged that the Foristell officer who filed the complaint against him had been drinking alcohol and that his involvement in the union played a significant role in the Department's "negligence in their investigation." The hearing was held, and Wright upheld Zumwalt's termination.

---

[3] The parties variously refer to Ms. Wright as "Dianne Wright," "Diana Wright," and "Dianna Wright."

In Count I, Zumwalt seeks review of his termination under the Missouri Administrative Procedures Act.  In Count II, Zumwalt sues the City of Wentzville for wrongful discharge.  In Count III, Zumwalt sues all Defendants under 42 U.S.C. § 1983 for violation of his constitutional rights.

***Legal Standard***

In ruling on a motion to dismiss, I must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff.  Fed. R. Civ. P. 12(b)(6); <u>Erickson v. Pardus</u>, 127 S.Ct. 2197, 2200 (2007).  An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1974 (2007).  To avoid dismissal for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  <u>Erickson</u>, 127 S. Ct. at 2200.  Although the specific facts are not necessary, the plaintiff must allege facts sufficient to give fair notice of what the claim is and the grounds upon which it rests.  <u>Id.</u>  "The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more that an 'sheer possibility.'  It is not however a 'probability requirement.'"  <u>Braden v. Wal-Mart Stores</u>, 588 F.3d 585, 594 (8th Cir. 2009).

Under Fed. R. Civ. P. 12(d), if a party presents matters outside the pleadings, I must either exclude them from consideration of the motion under Rule 12(b)(6) or treat the motion as one for summary judgment under Rule 56 after giving all parties a reasonable opportunity to present all the material pertinent to the motion. In this case, Defendants have attached material to their motion to dismiss. Defendants encourage me to consider the attached material under the rule that in general, a court "must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint as well as materials that are necessarily embraced by the pleadings." Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999). Because none of the material presented with Defendants' motion is necessary for deciding *this* motion, I will exclude all matters attached to the motion to dismiss and treat this motion as one for dismissal under Rule 12(b)(6) rather than one for summary judgment under Rule 56.

**Discussion**

*Count I*

Defendants argue that Count I of Zumwalt's First Amended Complaint, which purports to state a claim for judicial review of the City's decision to terminate him, fails to state a claim because Zumwalt fails to allege a "contested

case" as required by the statute.  In his response to Defendants' motion to dismiss, Zumwalt acknowledged that he failed to state a claim for a "contested case" for review.  I will therefore dismiss Count I for failure to state a claim.

*Count II*

Defendants argue that Zumwalt's claim for common-law wrongful discharge is barred under the doctrine of sovereign immunity.  Zumwalt concedes that the City has not waived its sovereign immunity by purchasing liability insurance.  As a result, I will also dismiss Count II for failure to state a claim.

*Count III*

In Count III, Zumwalt sues Noonan and Wright in their individual and official capacities, as well as the City of Wentzville, under 42 U.S.C. § 1983 for violation of his First Amendment rights to free speech and free association, his Sixth Amendment rights, his Fifth and Fourteenth Amendment due process rights, and for conspiracy to violate those rights.

*Claims against the City and Noonan and Wright in their official capacities*

Defendants argue that the claim against the City and the claims against Noonan and Wright in their official capacities should be dismissed because Zumwalt has failed to allege that the City had a policy, custom or practice that deprived Zumwalt of his constitutional rights.

A suit against an official "in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Therefore, and claims Zumwalt makes against Noonan and Wright in their official capacities with the City of Wentzville are claims against the City of Wentzville.

A municipality cannot be held liable under § 1983 solely because it employs a tortfeasor. Monell v. Dep't of Social Servs., 436 U.S. 658, 691 (1978). "[I]n other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Id. A local government can, however, be liable when its policy or custom is responsible for the constitutional violation. Id. at 694. The "policy" requirement "ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may be fairly be said to those of the municipality." Bd. of County Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. 397, 403–04 (1997). Acts performed pursuant to a "custom" that have "not been formally approved by an appropriate decisionmaker may [also] subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." Id. at 404. It is not enough to simply identify conduct attributable to the municipality.

Id.  Instead the municipality must have been the "moving force" behind the injury.

Id.

In his First Amended Complaint, Zurmwalt appears[4] to allege that the City's

policy, custom or practice at issue is the "selective, whimsical, and capricious

manner" in which Defendants exercised their discretion to terminate Zumwalt in

---

[4] Zumwalt is represented by counsel, but his Complaint is frequently unintelligible.  For example, in paragraph 39, where Zumwalt describes the policy, custom or practice, he states:

> As a matter of policy, custom, practice, and procedure, the Defendants, and each of them, individually and in their representative capacities as the duly elected or appointed officials of the Respondent City of Wentzville in their failure to abide in [sic] the duly enacted Uniform Personnel Policies and Procedures governing the conduct of the affairs regarding the Police Department personnel of the Respondent City of Wentzville and the investigations of complaints concerning personnel within the Police Department and, in their summary putative [sic] and retaliatory termination of Plaintiff's employment under the attendant circumstances in order to avoid the airing within the collective bargaining process of their impropriety of their administrative conduct of the municipal affairs during their tenure in office in a selective, whimsical, and capricious manner in their sole discretionary manner which can be considered as the custom and policy of the City of Wentzville by and through it's [sic] Chief Administrator, Defendant Wright.

At the Rule 16 Conference, I asked Zumwalt's attorney if he believed he would benefit from amending his Complaint.  He indicated that he did not believe filing an Amended Complaint was necessary.  I later issued an order that Zumwalt file a Second Amended Complaint to clarify, at a minimum, what exhibits were attached to his Complaint, with the hope that Zumwalt would take this opportunity to clean up his pleadings.   Rather than comply with my order to file a Second Amended Complaint, Zumwalt filed a notice that he would resubmit his First Amended Complaint with the appropriate attachments.

Because the Complaint is not clear, and neither are Zumwalt's arguments in response in opposition, as discussed below, I interpret his allegations to mean that the policy, custom or practice of the City of Wentzville at issue is the "selective, whimsical, and capricious manner" in which Defendants exercised their discretion to terminate Zumwalt in retaliation for his exercise of his First Amendment rights.

retaliation for his exercise of his First Amendment rights. In his response in opposition to Defendants' motion to dismiss, Zumwalt argues that "the implementation of the Defendant City's Uniform Personnel Policies by the City Administrator, Defendant Wright, in conjunction with the department heads, herein, the Chief of Police Defendant Noonan, in furtherance of a [sic] investigative process(es) of both unknown procedure(s) and unknown evidentiary criteria in the 'full decision-making' authority of the City Administrator and 'not subject to evaluation of the employee termination by any standard, gauge, or criteria or other limit' on the City Administrator's discretion' [sic] is a 'custom' which is both wholly subjective and arbitrary in its application." Zumwalt also argues that the City's custom of "creating inequitable, arbitrary, and capricious utilizations of the disciplinary procedures of the Personnel Code" directly resulted in a deprivation of Zumwalt's First Amendment rights.

Zumwalt does not claim that the City had a policy of disciplining employees for exercising their First Amendment rights. Instead, it appears he bases his Monell claims on the City's policy of allowing the City Administrator to use her decision-making authority in a subjective and arbitrary manner. In Dick v. Watonwan County, 738 F.2d 939, 942 (8th Cir. 1984), the Eighth Circuit discussed whether a municipal policy that allows employees to use their discretion

could give rise to municipal § 1983 liability under <u>Monell</u> when an employee exercises that discretion in an unconstitutional manner.  The court found that when the policy was simply to allow the employees to use their own discretion and judgment, the policy was not the equivalent of the municipality having given "official sanction" to the actions.  <u>Id.</u>  A municipality's "decision to rely on its employees' judgment is certainly not unconstitutional in and of itself, especially in an area where so many diverse fact situations will inevitably present themselves, and in which the exercise of particularized judgment is so important."  <u>Id.</u>

In this case, the City's policy of allowing its employees to exercise their discretion in a manner that allowed the employees to retaliate against him for his First Amendment Rights is not the equivalent of the municipality having given official sanction to retaliatory terminations.  Zumwalt does not allege that Noonan or Wright had previously exercised their discretion in a way that retaliated against another employee and the City continued to give them the discretion to do so. Because Zumwalt has failed to allege a policy or custom knowingly allowing of its supervisory employees to retaliate against employees for the exercise of their First Amendment rights, I will dismiss Zumwalt's claims against the City and against Noonan and Wright in their official or "representative" capacities.

*Sixth Amendment confrontation clause claim*

Zumwalt appears[5] to allege that Defendants deprived him of his Sixth

Amendment rights when they recommended his termination and terminated him in

retaliation for his First Amendment activities.  In his response in opposition to

Defendants' motion to dismiss, Zumwalt argues that due process incorporates the

Sixth Amendment right to confront witnesses "to an employee terminated for

alleged misconduct in the context of the rights incidental to a fair hearing."  The

cases Zumwalt cites do not support his argument.  The confrontation clause is

---

[5] Again, this portion of the complaint is unintelligible.  In paragraph 37, where Zumwalt describes his Sixth Amendment deprivation, he states:

> At all times hereinmentioned, the aforementioned retaliatory actions and course of conduct was properly and circumspectly objected to within the confines of the Rule and Regulations of the Police Department of the City of Wentzville and, upon information and belief, the conferring of, and inclusion of, additional prior charges of misfeasances of Petitioner in derogation to said Rules and Regulations of the Police Department of the City of Wentzville culminating in the termination of Petitioner by the Respondent Wright was taken in concert with, and conspiracy with, one another by the Defendants Noonan and Wright in order to muzzle and impede Petitioner from collectively bargaining for the uniform implementation of work rules and regulation to exposed [sic] the bias, prejudice, and retaliatory course of conduct of the Defendants' [sic] Noonan and Wright of Respondent City's affairs was a direct and proximate attempt by said Defendants to deny, suborn, and suppress Plaintiffs' [sic] exercising of his right to free speech and association and deny him minimal due process of law as guaranteed to him by the Fifth, Sixth, and Fourteenth Amendments of the Constitution of the United States and the State of Missouri.

inapplicable to civil cases.  <u>Austin v. United States</u>, 509 U.S. 602, 608 (1993)

("The protections provided by the Sixth Amendment are explicitly confined to

criminal prosecutions."); <u>see also</u> <u>Parkhurst v. Belt</u>, 567 F.3d 995, 1003 (8th Cir.

2009) ("[Defendant's] effort to impose in a civil case the requirements of the Sixth

Amendment, where a defendant enjoys the protection of the Confrontation Clause,

is inapposite.").  Because it is clear that Zumwalt had no Sixth Amendment right

to confront his accuser in a disciplinary proceeding, I will dismiss his Sixth

Amendment claims.

*Fifth Amendment due process claim*

In paragraph 37 of Zumwalt's complaint, he alleges that Defendants' actions

denied him due process as guaranteed by the Fifth Amendment.  Both the Fifth

and Fourteenth Amendments to the United States Constitution contain Due

Process Clauses.  The Fifth Amendment Due Process Clause limits the actions of

the federal government, and a plaintiff may sue for violations under <u>Bivens v. Six</u>

<u>Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971).  The

Fourteenth Amendment Due Process Clause applies to state action, and a plaintiff

may sue for violations under 42 U.S.C. § 1983.  In this case, all defendants were

municipal officials, and none were federal officials.  Because the Fifth

Amendment Due Process Clause applies only to federal action, and no defendants are federal actors, I will dismiss Zumwalt's Fifth Amendment claims.

*Fourteenth Amendment due process claims*

Zumwalt claims he was denied substantive and procedural due process by the manner in which his employment with the Department was terminated. Defendants argue that Zumwalt has failed to state a claim for a due process violation because, as an "at-will" employee, Zumwalt does not have a liberty or property interest in continued employment. Zumwalt argues that his sixteen years of tenure provide him with an expectation of continued employment and that he was entitled to a hearing to clear his good name.

When a person has a property right in continued employment, the state cannot deprive him of that right without due process. Cleveland Bd. Of Edu. v. Loudermill, 470 U.S. 532, 538 (1985). Zumwalt alleges he was an at-will employee of the City, and contends that the Uniform Personnel Policies and Procedure confer rights upon him because he was a classified employee with sixteen years tenure. Zumwalt has failed to cite any authority supporting his assertion that a tenure of sixteen years confers a property or liberty right upon an at-will employee. As a result, I will dismiss Zumwalt's procedural due process claim.

Defendants argue that Zumwalt has failed to state a claim for a substantive due process violation because Zumwalt has not alleged that Noonan or Wright made any charge against him that might seriously damage his reputation. Zumwalt argues that the allegations of misconduct here entitle him to a hearing to clear his good name.

"The Fourteenth Amendment guarantees substantive due process which prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." Moran v. Clarke, 296 F.3d 638, 643 (8th Cir. 2002). Courts have "always been reluctant to expand the concept of substantive due process [and therefore exercise] the utmost care whenever asked to break new ground in this field." Id. at 644. New liberty interests are occasionally recognized or expanded, however. Id.

Substantive due process does not protect an employee's "occupational liberty," or right to continued employment absent some rational and nonarbitrary reason for termination. Singleton v. Cecil, 176 F.3d 419, 424–25 (8th Cir. 1999). But employees do have a right "to be free from an employer's stigmatizing conduct, at least without an opportunity for a name-clearing response." Moran, 296 F.3d at 645. When determining whether a particular action violates substantive due process, the inquiry

> is not simply whether a liberty interest has been infringed but whether the extent or nature of the infringement . . . is such as to violate due process. It is a question of degree. In general, substantive due process is concerned with violations of personal rights . . . so severe . . . so disproportionate to the need presented, and . . . so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.

Id. at 647. "An employee's liberty interests are implicated where the employer levels accusations at the employee that are so damaging as to make it difficult or impossible for the employee to escape the stigma of those charges." Stodghill v. Wellston Sch. Dist., 512 F.3d 472, 475 (8th Cir. 2008). "[T]he requisite stigma has generally been found when an employer has accused an employee of dishonesty, immorality, criminality, racism, and the like." Id. at 466.

"But a 'name clearing' hearing is not necessary unless the employer makes a public statement that might seriously damage the employee's standing and associations in his community." Owen v. City of Independence, Mo., 445 U.S. 622, 662 (1980). When an at-will employee is terminated and "there is no public disclosure of the reasons for the discharge," the employee is not entitled to a hearing. Id. In this case, Zumwalt has not alleged that his employer made any public statements concerning the reasons for his termination. As a result, I will dismiss Zumwalt's substantive due process claim.

*Conspiracy claim*

Defendants argue that Zumwalt has failed to state a claim for conspiracy because he did not allege an agreement or meeting of the minds between Noonan and Wright. Zumwalt appears to argue[6] that Noonan's course of conduct coupled with Wright's acquiescence demonstrates a tacit understanding between the two. To state a 42 U.S.C. § 1983 conspiracy claim, Zumwalt must allege (1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; (3) that the overt act injured the plaintiff, and (4) that the plaintiff was actually deprived of a constitutional right. Askew v. Millerd, 191 F.3d 953, 957 (8th Cir. 1999). "[A]llegations of a conspiracy must be pleaded with sufficient specificity and factual support to suggest a 'meeting of the minds.'" Deck v. Leftridge, 771 F.2d 1168, 1170 (1985). To be sufficiently specific, Zumwalt "must at least allege that the defendants had directed themselves toward an unconstitutional action by virtue of a mutual understanding." Id.

---

[6] Zumwalt argues "Plaintiff opines that the course of conduct by Defendant Noonan in his arbitrary and capricious administration of the discipline decision making within the Police Department, and the acquiescence of that activity, and the general ratification of that arbitrary disciplinary standard, by Defendant Wright make a tacit understanding by which was used the personnel proceedings to muzzle and impede employees whom sought to change the culture within the Wentzville Police Department, particularly this Plaintiff."

Although, in his memorandum in opposition to Defendants' motion to dismiss, Zumwalt alleges the existence of a "tacit understanding" between Noonan and Wright, his First Amended Complaint does not allege that Noonan and Wright had an agreement or understanding. Zumwalt simply pleads that Wright and Noonan's actions "were taken in concert and conspiracy with one another." Zumwalt's mere mention of the word "conspiracy" does not state a claim for conspiracy to deprive him of his constitutional rights. As a result, I will dismiss Zumwalt's conspiracy claim.

*First Amendment claims*

*Speech*

Defendants argue that Zumwalt fails to state a claim for violation of his First Amendment right to free speech because Zumwalt's speech did not involve a matter of public concern and his speech was made as an employee, rather than a citizen. Zumwalt argues that his union activities as an organizer, shop steward, and negotiating team representative "place his speech activity as a matter of public concern."

"When a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal concern, absent the most unusual circumstances, a federal court is not the appropriate forum in

which to review the wisdom of a personnel decision taken by a public agency."

Connick v. Myers, 461 U.S. 138, 147 (1983). To decide whether a public

employee's speech is protected by the First Amendment, a court must first

determine "whether the employee spoke as a citizen on a matter of public

concern." Garcetti v. Ceballos, 547 U.S. 410, 418 (2006). This is a question of

law for the court and "must be determined by the content, form, and context of a

given statement, as revealed by the whole record." Connick, 461 U.S. at 147–148.

The Supreme Court's decisions prior to Garcetti clarified this issue in many

recurring contexts. McGee v. Pub. Water Supply, 471 F.3d 918, 920 (8th Cir. Mo.

2006). On the one hand, when a government employee speaks "as an employee

upon matters only of personal interest," such as many personnel matters, the First

Amendment does not offer protection. Id. On the other hand, when a government

employee speaks "as a citizen"—that is, outside the scope of employment—on

"matters of public concern," the First Amendment offers protection if the speech

survives the balancing test set forth in Pickering v. Bd. of Educ., 391 U.S. 563,

568 (1968). Id. One indicator of whether an employee's speech is a matter of

public concern is whether the employee sought to inform the public about the

issue on which she spoke or only contacted other employees. See Connick, 461

U.S. at 148.

It is necessary, therefore, to evaluate the nature of Zumwalt's speech. Zumwalt alleges he was a vocal advocate for collective bargaining rights of the members of the City's Police Department. He was also a vocal advocate for "the uniform administration of rules and regulations of the department ***within the workplace*** and has, or was, [sic] objecting to and/or did not participate in an atmosphere of cronyism and/or selective enforcement ***of work rules and orders*** permitted by Respondent Noonan and/or his staff acting within the course and scope of his authority and acquised [sic] in by Respondent Wright who knew, or should have known of the ongoing selectively enforced ***work rules and regulations*** within the Police Department of the City of Wentzville" (emphasis added). While the administration of rules and regulation in the workplace are related to an agency's efficient performance of its duties, Zumwalt's speech concerned internal office affairs and was made within the workplace. Zumwalt has not alleged that he informed the public of cronyism within the Department. In his response in opposition to Defendants' motion to dismiss, Zumwalt appears to argue that the public is the law enforcement community ("How big a 'public' is the law enforcement community?"). Zumwalt's arguments make it clear that his speech was directed only to his coworkers and supervisors and concerned issues

personal to them, not of public concern.  As a result, I will dismiss Zumwalt's First Amendment speech claims.

*Association*

The First Amendment's guarantee of freedom of association provides Zumwalt and other union members with a "constitutionally protected right to organize a labor union, even though they are public employees."  Int'l Assoc. Of Firefighters, Local No. 3808 v. City of Kansas City, 220 F.3d 969, 972 (8th Cir. 2000).  In other words, "a public employer may not constitutionally prohibit its employees from joining together in a union, or from persuading others to do so."  Roberts v. Van Buren Pub. Sch., 773 F.2d 949, 957 (8th Cir. 1985).  The protection applies not only to joining or encouraging others to join a union, but also to holding leadership positions in a union, filing complaints and participating in grievance proceedings because "the right of union membership would be 'meaningless' unless an employee's right to participate in union activities were also recognized.  Id.  For this reason, the "first amendment is violated by state action whose purpose is to intimidate public employees from taking an active part in union affairs or to retaliate against those who do."  German v. City of Kansas City, 776 F.2d 761, 764 (8th Cir. 1985).

Defendants argue that Zumwalt fails to state a claim for retaliation based upon his association with the union because he pleads that the City recognized the union six months before it terminated Zumwalt. They also argue that Zumwalt has failed "to articulate <u>any</u> specific facts" to support his allegations that his union activities were a motivating factor behind his termination (emphasis in original). Defendants have apparently confused the plausibility standard of <u>Twombly</u> and <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009) with the fact pleading standard used in the Missouri state courts. Federal courts use a simplified notice pleading standard that relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." <u>Romine v. Acxiom Corp.</u>, 296 F.3d 701, 711 (8th Cir. 2002). Neither <u>Twombly</u> nor <u>Iqbal</u> changed the Rule 8 pleading notice pleading requirement to fact pleading. Specific facts are not necessary; the plaintiff must only allege facts sufficient to give fair notice of what the claim is and the grounds upon which it rests. <u>Erickson</u>, 127 S. Ct. at 2200. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 127 S. Ct. at 1974.

In this case, Zumwalt alleges he was elected to the Local 1032 bargaining unit team. On July 6, 2009, as a Local 1032 representative, Zumwalt met in the union's initial bargaining session with the City and its agents, servants and

employees.  On August 3, 2009, the bargaining team again met with the City.

Zumwalt alleges that on August 6, 2009, he was notified in writing that an off-

duty Foristell police officer had filed a complaint against him regarding an

incident that occurred on August 1, 2009.  Zumwalt also alleges that city

personnel actively procured the filing of a formal complaint against him.  He

believes their decision to do so was based on his status as a "vocal advocate" for

collective bargaining rights and his position as a member or Local 1032's

bargaining team.  Based on the timing of the complaint against Zumwalt in

relation to his collective bargaining negotiation activities, I find it is plausible that

the reason the city employees actively procured or solicited the off-duty officer to

file a complaint against Zumwalt was his participation in the collective bargaining

negotiations.

Noonan and Wright assert they are entitled to qualified immunity.  The

doctrine of qualified immunity shields government officials "from liability for

civil damages insofar as their conduct does not violate clearly established statutory

or constitutional rights of which a reasonable person would have known."

Pearson v. Callahan, 129 S. Ct. 808, 815 (2009).  "Qualified immunity balances

two important interests—the need to hold public officials accountable when they

exercise power irresponsibly and the need to shield officials from harassment,

distraction, and liability when they perform their duties reasonably." Id. Officials are not entitled to qualified immunity if "(1) the facts, viewed in the light most favorable to the plaintiffs, demonstrate the deprivation of a constitutional right; and (2) the right was clearly established at the time of the deprivation." Baribeau v. City of Minneapolis, 596 F.3d 465, 474 (8th Cir. 2010). As discussed above, in this circuit, it is clear that the "first amendment is violated by state action whose purpose is to intimidate public employees from taking an active part in union affairs or to retaliate against those who do." German, 776 F.2d at 764. At the time of Zumwalt's termination, it was clearly established that retaliating against Zumwalt for his union activities violated the First Amendment. As a result, I will deny Defendants' motion to dismiss Zumwalt's free association claims against Noonan and Wright in their individual capacities.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss [#10] is **GRANTED in part** and **DENIED in part**.

Dated this 7th Day of July, 2010.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE