UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN P. ZUMWALT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:10 CV 561 RWS |
| | ) | |
| CITY OF WENTZVILLE, | ) | |
| MISSOURI, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff John Zumwalt was a police officer with the City of Wentzville Police Department. As a police officer, Zumwalt had a history of engaging in hostile and aggressive conduct and using abusive and profane language directed at citizens and fellow police officers. As a result of his conduct and language, Zumwalt was reprimanded but permitted to remain with the Police Department subject to a "Last Chance Agreement." Despite the Last Chance Agreement, Zumwalt admitted that he used profane and abusive language directed at a fellow police officer. After a panel of police officers considered a complaint filed by the fellow police officer and Zumwalt's Last Chance Agreement, the panel recommended Zumwalt be terminated. The Chief of Police adopted the recommendation and terminated Zumwalt. Zumwalt appealed the decision to the Wentzville City Administrator. His termination was upheld.

Zumwalt claims that his termination was the result of retaliation by Robert Noonan, Wentzville Chief of Police, and Dianna Wright, Wentzville City Administrator, for his participation in protected union activity. Because there was a legitimate, nondiscriminatory reason for his termination and Zumwalt failed to identify any facts sufficient to establish pretext

for his termination, summary judgment will be granted for Noonan and Wright.

**I.     Background**

Zumwalt was a Patrol Officer with the Police Department of the City of Wentzville, Missouri from February 1993 until August 2009. During Zumwalt's employment, many complaints were filed regarding Zumwalt's aggressive and inappropriate behavior. These complaints culminated in a complaint filed by Police Officer Thomas Whyte in September 2006. Whyte complained that Zumwalt was verbally and physically aggressive towards him. The Whyte complaint resulted in Zumwalt being placed on a "Last Chance Agreement." The Last Chance Agreement set out the various Police Department policies Zumwalt violated and indicated that any similar conduct or future violation of the policies would result in his termination. Zumwalt's Employee Misconduct Report outlined the investigation into Whyte's complaint and indicated:

> This investigation identified an employment history in which [Zumwalt's] supervisory performance was clouded with hostile and improper conduct. [Zumwalt] had been counseled on several occasions for such hostile conduct and/or use of improper and profane language. In efforts to mitigate this conduct [Zumwalt was] directed to attend classes for training in customer relations, personnel supervision, and other related training sessions dealing with Human Relations and management of Personnel. However, it appears that by [Zumwalt's] conduct, [Zumwalt is] unable to identify or amend such unwanted conduct.

Zumwalt was also demoted from Sergeant to Patrolman.

**A.     Officer Bittick's Complaint**

On August 1, 2009 Robert Bittick, a police officer for the City of Foristell, Missouri, observed a pickup truck driving erratically. Bittick contacted Patrolman Robert Walter, a Wentzville police officer, and advised him about the erratic pickup truck. Walter initiated a traffic

stop of the pickup truck. Bittick remained at the scene because of the number of passengers in the pickup truck. Bittick parked behind Walter's vehicle. After the traffic stop, Bittick left his car and walked to the front door of Walter's police vehicle.

Zumwalt arrived at the scene and parked behind Bittick's vehicle. Zumwalt spoke with Bittick. Zumwalt told Bittick "next time park in the parking lot." After Bittick continued talking, Zumwalt said "Next time parking in the fucking parking lot, so somebody doesn't throw you down."

The next morning Bittick contacted Walter, the officer that initiated the traffic stop, because Bittick was upset about Zumwalt's comments. Walter informed the shift supervisor, Lieutenant Burton, that Zumwalt and Bittick had a disagreement. Bittick then contacted Lieutenant Burton to discuss the confrontation with Zumwalt. Burton investigated Bittick's complaint and discussed the complaint with Wentzville Police Captain Pyatt. At about this same time, Bittick filed a written complaint against Zumwalt. Captain Pyatt forwarded Bittick's complaint to Lieutenant of Support Services David Stewart and Stewart started his own investigation of Bittick's complaint.

On or about August 4, 2009, Stewart submitted his report on Bittick's Complaint to Wentzville Police Chief Noonan. The report included summaries of the interviews that had been conducted. Chief Noonan did not have any direct contact with Bittick. As a result of Stewart's investigation, Noonan suspended Zumwalt on August 6, 2009 pending further investigation.

The Police Department may refer disciplinary matters to a review board if an employee may be suspended or terminated. Noonan referred Bittick's complaint against Zumwalt to a review board to determine what, if any discipline, may be appropriate. Noonan did not select the review

board members and was not present during the review board's discussion.

Captain Pyatt oversaw the review board. Stewart presented the results of his investigation and the review board was provided with a packet of information on Zumwalt that included Zumwalt's Last Chance Agreement. After discussion, Patrolman Bruns, an advocate of Local 1032 (the union in which Zumwalt was a member), moved to terminate Zumwalt's employment. Each of the three voting members of the review board voted to terminate Zumwalt's employment. Chief Noonan adopted the review board's recommendation and informed Zumwalt of his termination on August 12, 2009.

Zumwalt exercised his right to appeal his termination. The appeal of his termination was made to Wentzville's City Administrator, Dianna Wright. Wright held an appeal hearing on August 25, 2009. Zumwalt's witnesses were heard and a neutral third party selected by Zumwalt was present. During the hearing Zumwalt argued that his termination was not the result of Bittick's complaint or his behavior issues, but that these reasons were pretext for Noonan's desire to terminate Zumwalt in retaliation for his union activities. During the hearing, Zumwalt admitted he made the comment that gave rise to Bittick's complaint. Wright informed Zumwalt that she was upholding his termination because:

> By your own admission, you acknowledge that you utilized profane language when dealing with the public on several occasions which is conduct unbecoming an officer. The review of your behavior pattern indicates situations that [sic] have been exacerbated by your lack of judgment as to the use of an appropriate demeanor. The department has provided counseling and training on proper responses yet you have not learned form [sic] prior experiences, training or discipline.

**B.     Union Activities**

Approximately five months before the altercation between Zumwalt and Bittick, the

nonsupervisory members of the Wentzville Police Department voted to establish the Laboroer's International Union of North American (LIUNA) Local 1032 as their collective bargaining agent. Zumwalt became a member of Local 1032 and was elected to serve as shop steward. Zumwalt also served on the bargaining committee. Chief of Police Noonan learned of Zumwalt's union activities on July 6, 2009 at the first bargaining session. It is not disputed that the bargaining sessions were conducted in a professional and cordial fashion.

   C.   **Dismissed Claims**

On July 7, 2010, I dismissed the following claims asserted by Zumwalt in his First Amended Complaint: Counts I and II; the claims in Count III asserted against the City of Wentzville and Noonan and Wright in their official capacities; Count III's Sixth Amendment confrontation clause claim, Fifth and Fourteenth Amendment due process claims, conspiracy claim, and First Amendment speech claim. As a result, Zumwalt has two remaining claims: a claim against Noonan in his individual capacity and a claim against Wright in her individual capacity for allegedly violating Zumwalt's First Amendment right to freedom of association.[1] Defendants Noonan and Wright now move for summary judgment on the remaining claims.[2]

---

[1] In its Motion for Summary Judgment, Defendant City of Wentzville argues summary judgment should be granted in its favor on the claims Zumwalt asserts against it. I dismissed the claims Zumwalt asserted against the City and Noonan and Wright in their official capacities on July 7, 2010. Docket No. 28 at 11. Even if the claims had survived dismissal, the City would be entitled to summary judgment because Zumwalt has failed to articulate facts from which a jury could conclude the City had a policy or custom of knowingly allowing its supervisory employees retaliate to against employees for the exercise of their First Amendment rights. Monell v. Dep't of Social Servs., 436 U.S. 658, 691 (1978).

[2] Zumwalt filed a Second Amended Complaint that restates the claims I previously dismissed. It is clear he did not do so in an attempt to revive the dismissed claims because he indicates they are included for "continuity purposes."

## II.     Legal Standard

In considering whether to grant summary judgment, a district court examines the "pleadings, the discovery and disclosure materials on file, and any affidavits." Fed. R. Civ. P. 56(c)(2). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998). When a genuine issue of material fact exists, summary judgment should not be granted.

The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly supported motion for summary judgment, the nonmoving party has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

## III.     Discussion

Zumwalt claims that Noonan and Wright, in their individual capacities, retaliated against him for his union activities in violation of his First Amendment right to free association when he was discharged from the Wentzville Police Force. Noonan and Wright assert that I should grant

summary judgment in their favor because they are entitled to qualified immunity.

"Qualified immunity protects governmental officials from liability for civil damages when they are performing discretionary functions and their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Brockinton v. City of Sherwood, 503 F.3d 667, 671 (8th Cir. 2007). "[T]o withstand a motion for summary judgment on qualified immunity grounds, a civil rights plaintiff must (1) assert a violation of a constitutional right; (2) demonstrate that the alleged right is clearly established; and (3) raise genuine issue of fact as to whether the official would have known that his alleged conduct would have violated the plaintiff's clearly established right." Id. at 672 (quoting Habiger v. City of Fargo, 80 F.3d 289, 295 (8th Cir. 1996)). The analysis of qualified immunity claims does not need to continue if the facts do not show a violation of a constitutional right. Id. As a result, I will just examine whether Zumwalt has an actionable claim for retaliation.

"[T]he First Amendment restrains the government from retaliating against a public employee based on the employee's speech or associations." Morris v. City of Chillicothe, 512 F.3d 1013, 1018 (8th Cir. 2008) (citing Hughes v. Whitmer, 714 F.2d 1407, 1418 (8th Cir.1983)). A plaintiff must establish that he engaged in constitutionally protected conduct and that the protected conduct was a "substantial" or "motivating" factor in the defendant's action which resulted in dismissal. Id.

A three step burden-shifting test applies to First Amendment employment retaliation claims.

> First, a public employee must show that he suffered an adverse employment action that was causally connected to his participation in a protected activity. Once the employee satisfies his initial burden, the burden shifts to the employer to show a legitimate,

> nondiscriminatory reason for his or her actions. If the employer meets this burden, the burden shifts back to the employee to show that the employer's actions were a pretext for illegal retaliation. This third step of showing that a defendant's justification for firing is unworthy of credence is harder to overcome than the prima facie case because evidence of pretext is viewed in the light of the employer's justification.

Id. at 1018-19 (internal citations omitted).

The parties to do not dispute that, at the time of his discharge, Zumwalt had an established constitutional right to associate with Local 1032. See German v. City of Kansas City, 776 F.2d 761, 764 (8th Cir. 1985). The analysis of this case focuses on whether there was a legitimate, nondiscriminatory reason for Zumwalt's termination and, if so, whether there is sufficient evidence of pretext for illegal retaliation.

### A. Robert Noonan, Chief of Police

#### 1. Zumwalt's Prima Facie Case

Zumwalt does not distinguish which of his arguments are intended to support his assertion that his termination was causally connected with his union activity and his assertion that Noonan's reason for terminating him was pretext for Noonan's retaliation for Zumwalt's union activities. Zumwalt asserts that Noonan was aware of Zumwalt's union activities prior to Zumwalt's termination. Assuming this temporal proximity is sufficient to satisfy Zumwalt's prima facie case, I will consider whether Noonan has presented a legitimate, nondiscriminatory reason for Zumwalt's termination. See Morris v. City of Chillicothe, 512 F.3d 1013, 1019-20 (8th Cir. 2008). Noonan asserts that Zumwalt's termination was wholly unrelated to his union affiliation and was exclusively the result of Zumwalt's inappropriate conduct.

#### 2. Noonan's Legitimate, Nondiscriminatory Reason for Termination

During Zumwalt's employment with the Wentzville Police Department, many complaints

were filed regarding Zumwalt's aggressive and inappropriate behavior. These complaints culminated in a complaint filed by Police Officer Thomas Whyte in September 2006. Whyte complained that Zumwalt was verbally and physically aggressive towards him. The Whyte complaint resulted in Zumwalt being placed on a "Last Chance Agreement." The Last Chance Agreement set out the various Department policies Zumwalt violated and indicated that any future violation of the same or similar conduct or policy violation would result in termination. Zumwalt's Employee Misconduct Report that outlines the investigation into Whyte's complaint indicated:

> This investigation identified an employment history in which [Zumwalt's] supervisory performance was clouded with hostile and improper conduct. [Zumwalt] had been counseled on several occasions for such hostile conduct and/or use of improper and profane language. In efforts to mitigate this conduct [Zumwalt was] directed to attend classes for training in customer relations, personnel supervision, and other related training sessions dealing with Human Relations and management of Personnel. However, it appears that by [Zumwalt's] conduct, [Zumwalt is] unable to identify or amend such unwanted conduct.[3]

On approximately August 4, 2009, Chief Noonan was given the results of the investigation conducted by Lieutenant of Support Services Stewart into Bittick's complaint against Zumwalt. Chief Noonan did not have any direct contact with Bittick. Noonan suspended Zumwalt on August 6, 2009 pending further investigation.

The Police Department may refer disciplinary matters to a review board if an employee may be suspended or terminated. Noonan referred Bittick's complaint against Zumwalt to a review board to determine what, if any discipline, may be appropriate. Noonan did not select the review board members and was not present during the review board's discussion.

---

[3]Docket No. 80-14.

Captain Pyatt oversaw the review board, Stewart presented the results of his investigation, and the review board was provided with a packet of information on Zumwalt that included his Last Chance Agreement. After discussion, Patrolman Bruns, an advocate of Local 1032 (the union in which Zumwalt was a member), moved to terminate Zumwalt's employment. Each of the three voting members of the review board voted to terminate Zumwalt's employment. Chief Noonan adopted the review board's recommendation and informed Zumwalt of his termination on August 12, 2009.

Zumwalt was provided with a copy of the Corrective Action Report addressing his termination. It indicated that "[m]any attempts to help Zumwalt change his behavior patterns have failed. Zumwalt continues to exhibit hostile and improper behavior. Does not appear capable of change. Due to a continuous pattern of hostile behavior, it is recommended that Officer Zumwalt be terminated from his position at the Wentzville Police Department."

Based on Zumwalt's employment history, the Last Chance Agreement, and the review board's recommendation that Zumwalt be terminated, I find that Noonan has articulated a legitimate and nondiscriminatory reason for his actions regarding Zumwalt's termination.

3. Insufficient Evidence of Pretext

Zumwalt makes several assertions in support of his argument that Noonan's legitimate and nondiscriminatory reason for Zumwalt's termination is pretext for Noonan's retaliation for Zumwalt's union activities.[4]

---

[4]Zumwalt makes several assertions regarding the City of Wentzville, its general "reticence" to enter into an agreement with Local 1032, the nature of bargaining negotiations, and the timing of a decertification petition. These assertions are misplaced in supporting Zumwalt's claims against Noonan or Wright in their individual capacities.

First, Zumwalt asserts that the temporal proximity between Noonan's awareness of Zumwalt's union activities and his termination indicates Noonan's reason for Zumwalt's termination is pretext for retaliation. Temporal proximity between termination and engaging in a protected activity may be sufficient to satisfy Zumwalt's prima facie case, but this alone is not sufficient to support an inference of pretext. Morris, 512 F. 3d at 1019-20.

Zumwalt argues the Last Chance Agreement was enforced against him differently after Noonan learned Zumwalt was engaged in union activities. In an effort to establish pretext, Zumwalt points to a confrontation he had with a grade school principal that did not result in his termination. While Zumwalt was under the Last Chance Agreement, but before his union activities, an elementary school principal complained about her treatment by Zumwalt. Principal Kitson from Peine Ridge Elementary School reported that Zumwalt offended her by speaking to her in a condescending manner. As a result on this confrontation, Zumwalt received a verbal warning. Zumwalt asserts that the only difference between the Kitson complaint, for which he received a warning, and the Bittick complaint, for which he was terminated, was his union participation.

The Last Chance Agreement indicated that "any future violation of the same or similar conduct or policy violation will result in termination." The report describing the conduct covered by the Last Chance Agreement indicated Zumwalt had exhibited hostile conduct and used improper and profane language. Zumwalt's conduct towards Principal Kitson was not necessarily hostile and there is no evidence that he used profane language. The Principal Kitson's complaint was that Zumwalt was condescending. That Zumwalt received a verbal warning for behavior not covered by the Last Chance Agreement does not support the

conclusion that Zumwalt's later termination was the result of Noonan retaliating against Zumwalt for his union activities.

Zumwalt also asserts that two officers, Officer Whyte and Lieutenant Borroum, were disciplined in a disparate manner. Zumwalt's arguments are unpersuasive because neither Whyte nor Borroum were similarly situated to Zumwalt. There is no evidence before me to establish that either Borroum or Whyte were subject to a Last Chance Agreement or that either had a disciplinary history similar to Zumwalt's turbulent history. Because neither Whyte nor Borroum were similarly situated, Zumwalt's perceived variations in discipline are not evidence of pretext.

Zumwalt next argues the positive job reviews he received during his employment indicate he was terminated for his union activities. A positive job review can be indicative of pretext for termination. Morris, 512 F.3d at 1019. An Employee Performance Evaluation was conducted for Zumwalt semi-annually. The evaluations include mixed reviews of Zumwalt's ability to effectively interact with the public and consult with patrol officers. Reviews range from stating Zumwalt must take precautions to not be too aggressive to a review that Zumwalt has a positive attitude. Zumwalt specifically refers to the March 2009 evaluation that indicated he had "made great improvement." However, a full review of that evaluation shows that Zumwalt still "[s]ometimes allow[ed] frustrations to dictate behavior." These mixed reviews of Zumwalt's aggressiveness fail to provide a basis from which a jury could conclude that Zumwalt's termination was retaliation by Noonan for Zumwalt's union activity.[5]

---

[5]Other comments regarding Zumwalt's conduct include "big improvement in manner of communications" in August 2005; "sometimes overbearing and aggressive when dealing with subordinates; harsh when dealing with officers; has an aggressive personality and berates

Zumwalt makes several references to Captain Pyatt and Lieutenant Burton's active "solicitation" of Bittick's complaint. Zumwalt fails to articulate how this supports the conclusion that Chief Noonan retaliated against Zumwalt for his union activities. The deposition testimony Zumwalt relies on does not provide any factual support for such an inference. The testimony does not discuss Noonan, Zumwalt's union activities, or indicate that Noonan was directing the investigation in any capacity.

Finally, Zumwalt asserts that prior to the review board's consideration of Bittick's complaint, Captain Pyatt opined Chief Noonan had already determined that Zumwalt would be terminated. The record does not support this contention. Pyatt's deposition testimony reveals that when asked whether Noonan had determined that termination was a *possible* outcome, Pyatt responded "I can't speak for him but based on the severity of the charges, yes." Pratt Dep. 65:16. At most, Noonan was aware that termination was a possible outcome. Further, Zumwalt has failed to show any connection between Pyatt's opinion and the recommendation of the review board.

Based on the foregoing, I find that Zumwalt has failed to assert facts from which a jury could conclude that Noonan's reason for terminating Zumwalt was pretext. As a result, I will grant summary judgment in favor of Noonan because Zumwalt has failed to assert facts that Noonan violated his constitutional right of free association. Because Zumwalt did not suffer a constitutional violation, no further analysis of qualified immunity is necessary.

---

officers, a little too often, causing a lot of tension within the department" in August 2006; and that Zumwalt had a good attitude in February and September 2007.

### B. Dianna Wright, Wentzville's City Administrator

Zumwalt asserts a claim against Wentzville's City Administrator, Dianna Wright, in her individual capacity. Zumwalt asserts Wright violated his constitutional right to free association when she upheld his termination. Wright asserts she is entitled to qualified immunity.

After Zumwalt was terminated from the Wentzville Police Department, he exercised his right to appeal his termination to Wentzville's City Administrator, Dianna Wright. Wright held an appeal hearing on August 25, 2009. At the hearing, Zumwalt's witnesses were called and the neutral third party selected by Zumwalt was present. Zumwalt argued that his termination was not the result of Bittick's complaint or his behavior issues and that these reasons were pretext for Noonan's retaliation against Zumwalt for his union activities. During the hearing, Zumwalt admitted that he made the comment complained of in Bittick's complaint. Wright did not participate in the investigation of Bittick's complaint.

In the letter to Zumwalt informing him of her decision to uphold his termination, Wright indicated:

> By your own admission, you acknowledge that you utilized profane language when dealing with the public on several occasions which is conduct unbecoming an officer. The review of your behavior pattern indicates situations that [sic] have been exacerbated by your lack of judgment as to the use of an appropriate demeanor. The department has provided counseling and training on proper responses yet you have not learned form [sic] prior experiences, training or discipline.

Based on Zumwalt's disciplinary history and admission that he made the statement underlying Bittick's complaint during his appeal, I find that Wright has articulated a legitimate reason for her upholding Zumwalt's termination.

Zumwalt fails to distinguish which of his assertions are intended to support his argument

that there is a causal connection between his union activities and Wright upholding his termination and which are intended to support his pretext argument. Zumwalt asserts there is a temporal connection between Wright becoming aware of his union activities and her upholding his termination. While the temporal connection may be sufficient to satisfy Zumwalt's prima facie case, it alone is not sufficient to establish Wright's reason for upholding the termination are pretext. Morris, 512 F.3d at 1019-20.

Zumwalt fails to articulate any facts from which a jury could conclude that Wright's decision to uphold Zumwalt's termination is due to his union activities. Zumwalt alludes to Wright knowing he was a union participant and that she previously concurred with Noonan's suggested discipline of a different officer. These assertions do not support a finding that Wright retaliated against Zumwalt for his union activities. Furthermore, Zumwalt acknowledges that Wright was "deliberately indifferent to Plaintiff's union advocacy." Based on the foregoing, I find that Zumwalt has failed to establish that Wright's legitimate reason for her conduct is pretext. As a result, I will grant summary judgment in favor of Wright because Zumwalt has failed to establish that Wright violated his right of free association. Because Zumwalt did not suffer a constitutional violation, no further qualified immunity analysis is necessary.

## IV. Motion to Strike

Defendants have moved to strike Zumwalt's Statement of Material Facts [#84]. Defendants assert Zumwalt's opposition to Defendants' motion for summary judgment fails to comply with Federal Rule of Civil Procedure 56 and Local Rule 4.01. A memorandum in opposition to a motion for summary judgment shall

> include a statement of material facts as to which the party contends a

> genuine issue exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

E.D.Mo. L.R. 4.04(E)

Defendants assert that Plaintiff did not properly indicate whether each of the facts asserted in Defendants' Statement of Uncontroverted Material Facts are controverted or uncontroverted. Instead, Zumwalt composed a narrative response rephrasing part or all of the fact asserted by Defendants and in some cases adding additional factual assertions. Zumwalt also fails to set forth his additional facts in separately numbered paragraphs.

The manner in which Zumwalt responded to Defendants' Uncontroverted Material Facts made it difficult and time consuming to determine which facts he asserted were controverted. However, when I consider the facts as asserted by Zumwalt, he has failed to set forth facts from which a jury could conclude that Noonan or Wright's conduct regarding his termination was in retaliation for his union activities. As a result, I will deny Defendants' Motion to Strike as moot.

Accordingly,

**IT IS HEREBY ORDERED that** Defendant's Motion for Summary Judgment [#78] is **GRANTED** in part and **DENIED** in part as moot. Summary judgment is granted in favor of Defendants Noonan and Wright. The relief sought on behalf of City of Wentzville is moot as such claims were previously dismissed.

**IT IS FURTHER ORDERED that** Defendants' unopposed Motion to Supplement

Statement of Material Facts [#89] is **GRANTED**.

**IT IS FINALLY ORDERED that** Defendants' Motion to Strike [#84] is **DENIED** as moot.

A separate order of dismissal will be entered on this same date.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 1st day of September, 2011.